**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 26, 2014[*]
Decided December 1, 2014

**Before**

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

Nos. 13-3455 & 13-3457

| | |
|---|---|
| CASSANDRA WELCH, | Appeals from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Indiana, |
| | Indianapolis Division. |
| *v.* | |
| | Nos. 1:10-cv-01705-LJM-TAB & |
| ELI LILLY AND COMPANY, | 1:11-cv-00891-LJM-TAB. |
| *Defendant-Appellee*. | |
| | Larry J. McKinney, |
| | *Judge*. |

**O R D E R**

Over ten years ago, pharmaceutical giant Eli Lilly and Company fired Cassandra Welch, an African-American information technologist, after she doctored old e-mails relating to an internal investigation of her conduct. Welch insisted that racial discrimination was the real reason for her discharge, and she has been litigating that

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus these appeals are submitted on the briefs and records. *See* FED. R. APP. P. 34(a)(2).

contention ever since. In 2006 she and three other employees sued Eli Lilly on behalf of themselves and a putative class, principally alleging that the company had discriminated against African-American employees in awarding pay increases and promotions. That lawsuit, brought under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, relied on theories of both disparate impact and disparate treatment.

On Eli Lilly's motion the district court concluded that the plaintiffs could not proceed on their disparate-impact theory, which prompted them to abandon their attempt to certify a class. The four plaintiffs then proceeded against Eli Lilly in separate lawsuits claiming disparate treatment. Welch also filed a second lawsuit claiming that the company had retaliated for her first lawsuit by, among other actions, falsely maligning her when prospective employers inquired about her qualifications. Both lawsuits were resolved against Welch, and she filed separate appeals, which we consolidated for briefing and decision. Welch says nothing in her appellate brief about the retaliation suit, so we summarily affirm the judgment in that action. Neither does Welch say anything in her brief about the disparate-treatment theory on which her first lawsuit proceeded. Rather, on appeal she contends only that the district court erred in preventing her from pursuing the disparate-impact theory presented in the class-action complaint. We reject that contention.

Welch worked for Eli Lilly for 12 years. She was hired as a utility operator, and after several promotions accepted a different position in the information technology group in 2002. Two years later a coworker alleged that Welch had harassed him. While investigating that accusation, Eli Lilly discovered that Welch had altered the text of old e-mails to cover up the harassment and fired her. She filed an administrative charge of discrimination with the Indiana Civil Rights Commission and the Equal Employment Opportunity Commission, and then joined the proposed class action as a named plaintiff after receiving notice that the administrative investigation had been closed.

The plaintiffs' operative complaint alleged in part that Eli Lilly's "career development" decisions (e.g., performance reviews, promotions, and raises) discriminated against African Americans because those decisions put a premium on the supervisor's subjective assessment and allowed the supervisor's assumed prejudices to infect the decisionmaking process. It was this disparate-impact theory that the district court struck from the plaintiffs' complaint, reasoning that none of the four plaintiffs had exhausted this theory administratively, and also that the plaintiffs did not identify a specific, neutral employment practice having an adverse impact on African-American

workers. And, the court added, Eli Lilly's "career development" decisionmaking process, if subjective, could not be challenged under a disparate-impact theory. Welch then alleged in her individual lawsuit, as relevant to this appeal, that because of her race she received low raises in 2003 and 2004 and was not advanced to a higher pay grade in 2002 when she was selected for her position in the information technology group. In granting summary judgment for Eli Lilly on these allegations, the district court concluded that Welch lacked evidence that similarly situated coworkers of other races received better raises in 2003 and 2004. The court also reasoned that a jury could not find from the evidence that Eli Lilly's explanation for not increasing Welch's pay when she changed jobs in 2002—that the new position was within her current pay band—was pretextual.

As noted, Welch has briefed only the single contention that she should have been permitted to go forward with her disparate-impact theory concerning pay and promotions. That theory, says Welch, was incorrectly rejected based on a mistaken belief that a disparate-impact theory must rest on a facially neutral employment policy, which she did not allege. Our recent decision in *Adams v. Indianapolis*, 742 F.3d 720, 731–32 (7th Cir. 2014), does make clear that a plaintiff need not identify a *neutral* practice in order to state a claim under a theory of disparate impact. *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 991 (1988). But Welch reads too much into the district court's misstatement.

A plaintiff alleging a disparate impact still is "responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities. " *Watson*, 487 U.S. at 94; *see Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 717 (7th Cir. 2012). Welch did not try to do so and does not suggest that she could. In her sprawling, 136-page complaint, Welch describes Eli Lilly's culture of giving supervisors great say in making hiring and discharge decisions, disciplining employees, determining pay raises and assignments to pay levels, approving lateral and reallocation transfers, giving promotions, and resolving "other career development" questions. Yet in that counseled complaint, Welch does not allege that a *specific*, identifiable employment practice caused pay or promotion disparity. *See Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) (noting that older workers who challenged pay plan that was "relatively" more generous to younger workers still had "not identified any specific test, requirement, or practice within the pay plan that has an adverse impact on older workers"); *EEOC v. Chicago Miniature Lamp Works*, 947 F.2d 292, 305 (7th Cir. 1991) (explaining that plaintiff claiming disparate impact cannot rely on "bottom line" results and instead must identify "specific, affirmative employment practice" that caused

disparity); *EEOC v. Peoplemark, Inc.*, 732 F.3d 584, 591 (6th Cir. 2013) (noting that plaintiff must identify specific employment practice in complaint); *Stout v. Potter*, 276 F.3d 1118, 1124 (9th Cir. 2002) ("Plaintiffs generally cannot attack an overall decisionmaking process in the disparate impact context, but must instead identify the particular element or practice within the process that causes an adverse impact.").

Perhaps more importantly, Welch's lack of evidence to substantiate her claim of intentional discrimination also would have doomed her disparate-impact theory. The district court concluded that Welch could not prove intentional discrimination because she didn't identify similarly situated coworkers of other races who got more favorable raises in 2003 and 2004, and neither did she develop evidence that her selection for a new position in 2002 involved a change in pay grade. *See Welch v. Eli Lilly & Co.*, No. 1:10-cv-01705-LJM-TAB, 2013 WL 4413323, at *15–16 (S.D. Ind. Aug. 15, 2013). Welch does not challenge these determinations, and thus has waived objection. *See Garg v. Potter*, 521 F.3d 731, 736–37 (7th Cir. 2008); *Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 823 (7th Cir. 2001).

A plaintiff who was not injured by a challenged employment practice—even an objectionable practice—has no ground to complain, whether the theory be disparate impact or any other. *See Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 668 (7th Cir. 1996); *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 577 (6th Cir. 2004). Welch tried but failed to assemble evidence that she was treated less favorably than coworkers of other races, and thus she did not support a prima facie case of discrimination. That same lack of evidence of unequal treatment likewise would foreclose a claim of discrimination premised on a theory of disparate impact. *See Farrell v. Butler University*, 421 F.3d 609, 617 (7th Cir. 2005) (plaintiff professor who was deemed eligible for award and actively considered by selection committee could not complain that eligibility requirements had disparate impact on women by making women less likely to be found eligible for consideration); *Gilty v. Village of Oak Park*, 919 F.2d 1247, 1248–49, 1254–55 (7th Cir. 1990) (police officer who lied about credentials in applying for promotion was not qualified for promotion and thus could not claim that test given to applicants had disparate impact on black officers); *Carpenter v. Bd. of Regents of the Univ. of Wis. Sys.*, 728 F.2d 911, 915 (7th Cir. 1984) (explaining that plaintiff claiming disparate impact must establish "that he or she was really injured" by challenged employment policy, and thus, for example, "a plaintiff denied a promotion could not challenge a promotion test as discriminatory, if promotion was denied for a reason completely unrelated to the test, such as lack of experience"); *Phillips v. Cohen*, 400 F.3d 388, 393, 396–97 (6th Cir. 2005)

(concluding that four of five plaintiffs could not establish disparate impact because they did not submit evidence that they qualified for promotions).

Accordingly, in both appeals the judgments are AFFIRMED.